IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR175 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| JOHN GORDON and | ) | RECOMMENDATION |
| LEE ADKINS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motions to suppress filed by defendant John Gordon (Gordon) (Filing No. 44) and by defendant Lee Adkins (Adkins) (Filing No. 46).[1] Gordon and Adkins are charged in the Indictment with other co-defendants with a conspiracy to manufacture methamphetamine (Count I) in violation of 21 U.S.C. § 846 and with the possession of pseudoephedrine with intent to manufacture methamphetamine (Count II) in violation of 21 U.S.C. § 841(c)(1).

Both defendants seek to suppress evidence obtained by area law enforcement officers during a search of residences and vehicles in Plattsmouth, Nebraska, on March 6, 2008, pursuant to two search warrants issued by Sarpy County Judge Todd J. Hutton. Gordon also seeks to suppress statements he made to law enforcement officers as fruits of an illegal search.

An evidentiary hearing was held on the motions on July 23, 2008. Gordon was present in person with his counsel, Joseph F. Gross, Jr. Adkins was present with his counsel, Jerry M. Hug. The government was represented by Assistant U.S. Attorney Kimberly C. Bunjer and Danielle Savington, Senior Certified Law Clerk with the U.S. Attorney's Office. During the hearing, the court heard no testimony, but received into evidence the following exhibits: (Exhibit 1) a search warrant for 10015 Hwy 75, Lot # 2,

---

[1]As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. This document also contains links to the Nebraska local rules and legal citation from the federal reporters. The hyperlinked documents appear in blue underlined text. Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements. The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

Plattsmouth, Nebraska; (Exhibit 2) a search warrant for 2425 S. 15th St., Lot # 36, Plattsmouth, Nebraska; and (Exhibit 3)[2] an application and affidavit for search warrants. After the hearing, the following additional exhibits were received in accordance with the agreement of the parties at the hearing (Filing No. 54): (Exhibit 4) return for search warrant in Exhibit 1; (Exhibit 5) return for search warrant in Exhibit 2; and (Exhibit 101) a summary of a statement by Gordon.  A transcript of the hearing (TR.) was filed on August 4, 2008 (Filing No. 56).

## FINDINGS OF FACT

Both search warrants at issue before the court are based on the same March 5, 2008 application and affidavit of Detective David Walker of the Plattsmouth Police Department, Plattsmouth, Nebraska and Detective Zeb Simones of the Bellevue Police Department, Bellevue, Nebraska.  The affidavit details the training and experience of the officers in investigating clandestine labs manufacturing methamphetamine.  Based upon their training and experience, the officers are aware that individuals involved in the distributing and manufacturing of methamphetamine keep methamphetamine, its precursors, records of drug transactions and large sums of currency stored in residences and automobiles.  Additionally, the officers are aware that individuals involved in the manufacturing of methamphetamine have learned law enforcement officers look for individuals in possession of several precursors.  Conspirators involved in the manufacturing of methamphetamine will assign individuals with different responsibilities to avoid law enforcement detection.  Individuals will eventually gather all the necessary items to be used collectively in the manufacture of methamphetamine.  One individual's assignment may be to purchase over-the-counter cold tablets which contain pseudoephedrine, another may be to collect lithium batteries, another may be to collect anhydrous ammonia, etc. The affidavit set forth the activities of Joseph W. Hofler and Joseph W. Hofler, Jr., in collecting various ingredients for the manufacturing of methamphetamine.  The Hoflers used various

---

[2] Ordinarily, exhibits received during a hearing of this type are not filed.  However, as a convenience the court includes a link to Exhibit 3 which is found on p. 2 of Filing No. 46-2, attached to the defendant Adkins's brief in support of the motion to suppress.  Future citations to Exhibit 3 will use the page numbering located on the upper right hand corner (e.g., 13 to 29) of the exhibit found at Filing No. 46-2.

associates in obtaining the ingredients, especially the purchasing of cold tablets containing pseudoephedrine from various local pharmacy outlets. Among the named associates were the defendants Gordon and Adkins. The affidavit specifically related to Gordon and Adkins as set forth below:

> From November 24th, 2007 until February 28th, 2008 Lee ADKINS has been documented through pseudoephedrine logs obtained from pharmacies purchasing 11 boxes of cold tablets which contain 27.84 grams of pseudoephedrine from 5 different stores located in Bellevue, NE. The amount of cold tablets ADKINS has obtained can potentially produce .94 oz. of finished Methamphetamine.
>
> ADKINS purchases of cold tablets which contain pseudoephedrine were compared to Joseph HOFLER'S cellular telephone records which were subpoenaed by Bellevue Police. The cellular records show that between December 14th, 2007 and January 1st, 2008 there were 38 telephone calls between Joseph HOFLER'S cellular phone and 402-296-5132. Det. Walker confirmed through the Plattsmouth 911 Center that 402-296-5132 belongs to Rose Adkins at 311 S 8th St. Plattsmouth NE. Det. Walker knows that Rose Adkins is Lee ADKINS mother. Plattsmouth Police and Cass County Sheriffs Office records show that Lee ADKINS has lived with his mother at 311 S 8th St in the past. According to Omaha Public Powere [sic] District records, Lee ADKINS did not move to 10015 Hway 75 Lot #2 until February 5th, 2008. Based on the above information, the Affiant's [sic] believe that the 38 telephone calls would likely have been between Lee ADKINS and Joseph HOFLER. There has been no other connection established throughout the entire investigation between Rose Adkins and Joseph HOFLER.
>
> Two of ADKINS' cold tablet purchases were on December 17th, 2007 from separate stores in Bellevue NE. HOFLER'S cellular records show six calls between HOFLER and 402-296-5132 on December 17th, 2007. It is the affiant's belief that these six calls would have been between HOFLER and ADKINS.
>
> On January 1st, 2008, ADKINS purchased three boxes of cold tablets from three separate stores in Bellevue NE. HOFLER'S cellular records show one telephone call between HOFLER and 402-296-5231 on January 1st, 2008.
>
> Pseudoephedrine records show that on November 24th, 2007, at 1515 hrs, Lee ADKINS purchased one box of cold tablets from Wal-Mart on South 15th St. Bellevue NE.

Pseudoephedrine records also show that on November 24th, 2007 at 1605, Joseph HOFLER purchased one box of cold [sic] from the HyVee located near 36th and L St. Omaha NE. Cellular records for these dates have been subpoenaed, but not yet received. According to pseudoephedrine records, ADKINS purchased two boxes of cold tablets from two separate stores in Bellevue NE on December 17th, 2007. Pseudoephdrine [sic] records also show cold tablets purchases by Paul FOSTER, Andy SMALLRIDGE, Jason CODR and Cheyenne HUFFMAN on December 17th, 2007.

Pseudoephderine [sic] records show that on January 15th, 2008, Lee ADKINS purchased two boxes of cold tablets from two separate Bellevue NE pharmacies. Pseudoephedrine records also show that Cheri HOOSE purchased on [sic] box of cold tablets from a Bellevue, NE pharmacy on January 1st, 2008.

Pseudoephedrine records show that on January 8th, 2008, Joseph HOFLER and Catherine THOMAS purchased several boxes of cold tablets from Bellevue NE pharmacies. The records also show that Lee ADKINS purchased three boxes of cold tablets from three separate Bellevue NE pharmacies on January 9th, 2008. The records also show several cold tablet purchases by Andy SMALLRIDGE and one by Catherine THOMAS on January 10th, 2008.

Based on information obtained during this investigation, the Affiant's [sic] know Lee ADKINS, Andy SMALLRIDGE, Jason CODR, Paul FOSTER and Cheri HOOSE are all associates on [sic] JOSEPH HOFLER. Cheyenne HUFFMAN is believed to be Fred HUFMANN's [sic] wife who is an associate of Jason CODR. Based on the pseudoephedrine logs detailed above, it is known that Lee ADKINS purchased cold tablets on the same days as CODR, HOOSE, HUFFMAN, and FOSTER. The pseudoephedrine logs establish that associates of Joseph HOFLER purchases [sic] cold tablets on the same day or within one day of each other.

On January 22nd, 2008 at approximately 0920 hours, Det. Walker was conducting surveillance on HOFLER'S apartment located at 1105 Ave. D Apt. #6 in Plattsmouth, NE when he observed ADKINS enter HOFLER's apartment while HOFLER was fueling his vehicle at the Short Stop. HOFLER then returned to his apartment and at approximately 0924 hours ADKINS exited the apartment.

On February 4th, 2008 Bellevue Police, Plattsmouth Police, and Cass County Sheriff surveillance units were conducting surveillance at HOFLER'S apartment when

4

> ADKINS was observed entering the apartment. Approximately 2 minutes later ADKINS exited the apartment and left the area.
>
> On February 26th, 2008 at approximately 2200 hours Bellevue Police, Plattsmouth Police, Cass County Sheriff surveillance units observed ADKINS stop at HOFLER'S apartment for approximately 2 minutes.
>
> Det. Walker knows from experience that ADKINS [sic] short-term visits are consistent with those who are involved in the trafficking of narcotics.
>
> On-going surveillance shows ADKINS has no gainful employment and has a Nebraska criminal history, which includes arrests for Possession of a Controlled Substance in 2004.
>
> On February 28th, 2008 HOFLER was observed by Det. Simones and Inv. Watson visiting ADKINS' residence located at 10015 Hwy 75 Lot #2, Plattsmouth, NE. A record from Omaha Public Power District indicates ADKINS is the new and current customer of 10015 Hwy 75 Lot #2 as of February 5th, 2008.
>
> * * *
>
> On January 14th, 2008 surveillance unit followed HOFLER and Andrew SMALLRIDGE as they purchased cold tablets which contain pseudoephedrine from 4 different stores in Bellevue, NE. SMALLRIDGE was eventually dropped off at John GORDON'S residence located at 2425 S. 15th St. Lot #36 in Plattsmouth, NE. HOFLER then drove to his son, JOSEPH'S residence located at Lot #78 in the same trailer park and picked up JOSEPH.

**See** Filing No. 46-2 p. 2 - Ex. 3 - Aff. at pp. 19-21.

> On January 14th, 2008 HOFLER and Andrew SMALLRIDGE were documented through pseudoephedrine logs obtained from pharmacies purchasing cold tablets which contain pseudoephedrine from 4 different stores in Bellevue, NE. Surveillance units followed HOFLER and SMALLRIDGE back to Plattsmouth where SMALLRIDGE was dropped off at the residence of John GORDON located at 2425 S. 15th St. Lot #36 in Plattsmouth, NE. Det. Walker observed SMALLRIDGE carrying a white plastic sack while he walked from HOFLER's vehicle to GORDON'S trailer.

*Id.* at p. 24

> Officer's [sic] verified NEW'S identity and the active warrants. NEW was placed under arrest and searched. During this search Officer Thomas located 1 box of Walgreen's

5

> brand cold tablets which contain pseudoephedrine and 6 energizer lithium batteries.
>
> NEW explained to the officer's [sic] the cold tablets were for his sick children and the batteries were for a flashlight. Officer Thomas asked NEW where he had been and NEW indicated he was at GORDON'S but said he didn't get the pills or batteries from the [sic] there.
>
> On various surveillance operations NEW has been seen frequenting GORDON'S trailer during daytime and nighttime hours.
>
> On February 14th, 2008 surveillance units followed HOFLER and SMALLRIDGE as they purchased cold tablets which contain pseudoephedrine from ShopKo, Baker's, and Walgreen's in Bellevue, NE. HOFLER and SMALLRIDGE were followed back to Plattsmouth, NE where SMALLRIDGE was observed being dropped off near GORDON'S trailer at Lot #36.

*Id.* at p. 25.

This single affidavit was used to support the request for a search warrant for numerous locations, vehicles, and persons in the Plattsmouth area including Adkins's address of 10015 Hwy 75 Lot #2, Plattsmouth, and Gordon's address of 2425 S. 15th St. Lot #36, Plattsmouth.

## LEGAL ANALYSIS

### A.  Search Warrant

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, **Search and Seizure**, § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983): "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*; *United States v. Nguyen*, 526 F. 3d 1129, 1133 (8th Cir. 2008). Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Hansel*, 524 F.3d 841, 845 (8th Cir. 2008). "The duty

of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . .  Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996); **see** *Gates*, 462 U.S. at 238.  The Eighth Circuit has explained the issuing magistrate's obligation as follows:

> The task of the issuing magistrate is to make "a practical, **common-sense decision** whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Id.*  When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), **cert. denied**, 459 U.S. 1201 (1983).  **Affidavits must be read in "a common-sense and realistic fashion,"** *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir. 1988), **citing** *United States v. Ventresca*, 380 U.S. 102, 108 (1965).  "Deference is accorded an issuing magistrate's probable cause determination . . ." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), **cert. denied**, 440 U.S. 910 (1979).

*United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (emphasis added); **see also** *United States v. Spinosa*, 982 F.2d 620 (1st Cir. 1992) ("The affidavit must be 'viewed in its entirety,' and 'must be given a common-sense and realistic, rather than a hyper technical interpretation.'").  As the Eighth Circuit has stated, "Both circumstantial evidence, *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995), and inferences, *United States v. Jones*, 535 F.3d 886, 888 (8th Cir. 2008), may support probable cause." *United States v. Swope*, No. 07-3632, 2008 WL 4181152, at *5 (8th Cir. Sept. 12, 2008).

"Probable cause must exist at the time of the issuance of the warrant, not merely at some earlier time." *LaMorie*, 100 F.3d at 554.  However, since there is no bright-line test for determining whether the information in an affidavit is stale, the statements in an

affidavit must be judged by the particular circumstances of the case. "[T]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). Where continuing criminal activity is suspected, the passage of time is less important. *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995).

The defendants argue the affidavit lacks enough information regarding whether their specific residences or vehicles were linked to criminal activity to provide probable cause for issuance of the search warrants. Additionally, the defendants contend they were singled out for guilt merely by their association with the main targets of the law enforcement investigation. However, the affidavit contains information that provides the officers with a fair probability that contraband or evidence of a crime would be found at the residences or within the vehicles of the defendants. Moreover, the defendants' conduct related to their residences and vehicles may have appeared innocent to a member of the public when seen in isolation. However, such conduct in association with the Hofflers and other co-defendants further justifies the officers' suspicions that evidence reflecting distribution of illicit drugs would be found at the residences and/or in the vehicles. Specifically, for example, Adkins was known to have purchased numerous boxes of pseudoephedrine tablets on several occasions, sometimes on the same dates as his co-conspirators; Adkins and Hoffler were seen at each other's residences for short-term visits; Adkins has no known employment, but did have a criminal history. Similarly, co-conspirators were known to have purchased numerous boxes of pseudoephedrine tablets, then go to Gordon's residence with a plastic sack, and/or make short-term visits at Gordon's residence during the daytime and nighttime hours. These occurrences were periodic in the months and days leading up to issuance of the search warrant. Under the totality of the circumstances, the application and affidavit contains sufficient probable cause to support issuance of the search warrants at issue here.

**B.    *Leon* Good Faith Exception**

Even assuming *arguendo*, that probable cause was lacking in sufficiency or freshness, the ***Leon*** good faith exception would allow the admissibility of the evidence seized.  See *United States v. Leon*, 468 U.S. 897 (1984).  In *Leon*, the Supreme Court held "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" *LaMorie*, 100 F.3d at 555.  There are four exceptions to this good faith rule:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2)  where the issuing officer "wholly abandoned his judicial role;" (3)  where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

*Id.* (internal citations omitted).

None of those exceptions were present in this case.  The defendants contend the issuing Judge may have "rubber stamped" the affidavits for these defendants because eleven search warrants were signed at the same time based on the single application and affidavit.  Other than the defendants' bald assertion, there is no evidence the issuing judge did not read and assess each warrant.  Accordingly, the officers could reasonably rely upon the search warrant as to the residences and vehicles of the defendants.  Therefore the defendants' motions to suppress the results of the execution of the search warrants should be denied.

**C.    Gordon's Statement**

Having found the search warrants were supported by adequate probable cause, the court finds Gordon's statement was not tainted by any "poisonous tree" as claimed by Gordon under *United States v. Wong Sun*, 371 U.S. 471 (1963).  Gordon's motion to suppress his statement should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

1. Gordon's motion to suppress (Filing No. 44) be denied.
2. Adkins's motion to suppress (Filing No. 46) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) BUSINESS days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 26th day of September, 2008.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge